## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**ROBERT MARTIN**                                                                           **PLAINTIFF**

**V.**                                                                                   **NO: 3:20-CV-264**

**RUREDY 808, L.L.C. and**                                                            **DEFENDANTS**
**FRANK SAVAGE**

**consolidated with**

**UNITED STATES OF AMERICA**                                                          **PLAINTIFF**

**V.**                                                                                  **NO. 3:21-CV-192**

**RUREDY808, L.L.C. AND**                                                             **DEFENDANTS**
**FRANK SAVAGE**

### OPINION AND ORDER

This long-running case arises out of a basic landlord-tenant dispute.[1] Plaintiff Robert
Martin brings claims against Defendants RUREDY808, L.L.C. ("Ruredy") and Frank Savage
under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA") and Mississippi state law. The
matter is before the Court on Plaintiff's Motion for Summary Judgment as to Personal Liability
(ECF No. 146); Plaintiff's Motion for Summary Judgment as to Fair Housing Act Claims (ECF
No. 148); and Defendants' Motion for Summary Judgment (ECF No. 150).[2] The motions are fully
briefed, and the Court has thoroughly reviewed the record and carefully considered the applicable
law. This is the decision of the Court.

---

[1] In the Court's view, the dispute should have been resolved well before the case was filed in federal court.
[2] Record citations in this Opinion and Order refer to the lead case, No. 3:20-cv-264.

BACKGROUND

Frank Savage and his wife, Anne Savage, formed RUREDY808, L.L.C. under the Texas Business Organizations Code on January 13, 2016 (the "Texas LLC"). (ECF No. 146-1, PageID.587). Mr. and Mrs. Savage were the sole members of the Texas LLC; Mr. Savage served as corporate agent; and the Texas LLC shared the Savages' home address, 5356 Sugar Hill, Houston, TX 77056. (*Id.*) In February 2016, the Savages purchased a condominium in Oxford, Mississippi, for their son to use while a student at the University of Mississippi. (Savage dep., ECF No. 146-2, PageID.603). They transferred ownership of the condominium to the Texas LLC the day after purchase. (ECF No. 146-3, PageID.802).

The Savages' son and his housemates resided in the condominium until the son's graduation in May 2019, after which the Savages decided to maintain the condominium as a rental property. On June 26, 2019, Mr. Savage (individually or on behalf of the Texas LLC) entered into a Management Agreement with APM Oxford, L.L.C. ("APM") (ECF No. 150-1, PageID.1441-1449).[3] The Management Agreement grants APM "the exclusive right commencing on June 26, 2019, to rent, lease, operate and manage the real property … located at 3001, Old Taylor Road, Unit 808" in Oxford, Mississippi. (*Id.*, PageID.1441).

On July 22, 2019, APM executed a Lease Agreement (the "Lease") with Robert Martin and two other individuals. ECF No. 150-3, PageID.1478-1496). The Lease specifies that the Lease is "between the undersigned Lessor … acting through its duly authorized Agent, APM Oxford, LLC." (*Id.*, PageID.1478). There is no signature by Frank Savage or an LLC – no identification of an "undersigned Lessor." Instead, the signature line specifies "Property Manager, Acting for

---

[3] The Management Agreement is between "the undersigned owner" and APM. (ECF No. 150-1, PageID.1441-449). Mr. Savage signed the Management Agreement without any reference to the Texas LLC. (ECF No. 1449). Mr. Savage says that he was acting in his capacity as manager of the Texas LLC. The address specified for the Owner is 5356 Sugar Hill Drive, which is both Mr. Savage's home address and the registered address for the Texas LLC.

Lessor" and describes the signatory as "Agent." (*Id.*, PageID.1485.) APM employee Burke Stockett's signature appears on the signature line, underneath which appear the name and address of APM Oxford, LLC. (*Id.*) The Lease provides explicitly that pets are not allowed on the premises without prior written permission from the Lessor. (*Id.*, PageID.1479). A special provision specifies "Robert Martin service animal 'Slade'" and is initialed by Mr. Martin. (*Id.*, PageID.1485). APM, Mr. Martin, and the other tenants all understood this to grant an accommodation to Mr. Martin for his service dog, Slade.

Mr. Martin's need for a service dog dates back at least to July 2016. A letter dated July 28, 2016, from Nurse Practitioner William Johnson reflects that Mr. Martin was under his care for mental illness, including anxiety, panic attacks, and depression and that he prescribed an emotional support animal to Mr. Martin as part of Mr. Martin's treatment. (ECF No. 150-10, PageID. 1515). NP Johnson stated that the emotional support animal would "lower [Mr. Martin's] anxiety and panic attacks and assist in necessary activities of daily living." (*Id.*) In August 2016, Slade was registered as a service dog with Mr. Martin as his handler.[4] (ECF No. 150-6, Page.ID.1503). In applying to rent the condominium, Mr. Martin's prospective housemates advised APM that Mr. Martin had a service dog to help him with seizures. Before agreeing to the terms of the Lease, Mr. Martin also notified APM of his need for an accommodation for Slade, which APM granted.

Approximately three days after APM and Mr. Martin executed the Lease, Mr. Savage e-mailed Mr. Stockett. Mr. Savage stated that he was "very disappointed on being notified a service animal is in our unit" and needed "answers today as to an immediate resolution to all of this." (ECF No. 150-4, PageID.1497). Mr. Savage noted that Mrs. Savage also was "extremely upset to say the least." (*Id.*) Mr. Savage pointed out that he had "clearly instructed" APM not to allow

---

[4] Defendants contend that the registration lacks legitimacy.

animals in the condominium. (*Id.*) APM responded that it had granted what it viewed as a legally required accommodation.

APM's response did not satisfy Mr. Savage, and a dispute between Mr. Savage and APM escalated rapidly. Reed Martz, as counsel to the Texas LLC and the Savages, exchanged multiple e-mails with Charles Yow, counsel to APM, between August 15 and August 27, 2019. (ECF No. 146-4, PageID.817-856). In this correspondence, Mr. Yow generally took the position that the FHA and ADA necessitated the accommodation, while Mr. Martz presented what he described as "strong evidence that Mr. Martin's representations about his disability and the animal's training were untruthful." (*Id.*, PageID.826.) The materials Mr. Martz shared include social media posts and a copy of Mr. Martin's driver's license, which contains no restriction for seizures. (*Id.*) On August 27, 2019, Mr. Yow replied, detailing reasons the materials Mr. Martz sent were not dispositive and stating that "absent additional proof[,] my client is unwilling to ask the tenant additional questions that would place it in violation of applicable federal civil rights laws." (*Id.*,.PageID.27). On behalf of APM, Mr. Yow offered to terminate the management agreement and turn over management of the property to Mr. Savage. (*Id.*) The parties terminated the agreement, and Mr. Savage or the Texas LLC took over as landlord.

Mr. Martz, as counsel for the Texas LLC, began corresponding directly with Mr. Martin. In a letter dated September 5, 2019, after consulting HUD guidelines, Mr. Martz invoked the FHA and requested more information about Mr. Martin's disability. (ECF No. 150-9). Mr. Martz asked whether the dog is "a service animal required because of a disability" and what "work or task …the dog [has] been trained to perform." (*Id.*, PageID.1514). Mr. Martz requested "reliable disability-related information that is necessary to verify that you meet the Act's definition of disability (*i.e.* has a physical or mental impairment that substantially limits one or more major life activities)."

4

Mr. Martz asked Mr. Martin to describe the accommodation he needed and show the relationship between his disability and the need for the requested accommodation. (*Id.*)

Fraught phone calls and text exchanges between Mr. Martz and Mr. Martin ensued. Mr. Martin attempted to answer the questions via e-mail on September 17, 2019, stating that "Slade is required through a mental disability, therefore, why your client didn't see an 'obvious' disability [sic]." (*Id.*, PageID.1519). Mr. Martin provided Slade's certificate and explained that Slade "has been trained to react and neutralize a situation due to related known mental illnesses [sic]." (*Id.*) He stated in multiple ways that Slade helps him manage his mental illness. (*Id.*)

On September 26, 2019, and again on October 1, 2019, Mr. Martin's then-counsel, Sam Martin (who is Mr. Martin's cousin), corresponded with Mr. Martz and again attempted to provide the information Mr. Martz requested. Sam Martin explained that Slade "has been trained to alert for seizures and to [lie] on top of Mr. Martin when he is having a seizure…[which] increases the likelihood that the seizure will stop." (ECF No. 150-14, PageID.1520). Sam Martin stated that the accommodation needed is Slade's presence, which helps Mr. Martin manage his seizures. "Slade does this by not only sensing the symptoms before my client does but also by neutralizing the seizures when these occur." (*Id.*, PageID.1520). Sam Martin informed Mr. Martz, "I do have a recent medical record that evidences a diagnosis of PTSD, GAD (anxiety) and Bipolar Type II Disorder. [Mr. Martin] is very sensitive about this and did not want to disclose the specific disabilities from which he suffers. (*Id.*, PageID.1522). Sam Martin noted that that Mr. Martin "does have seizures as well but it is my understanding that his medical provider has not sent him his records yet…I suspect that it was easier for him to relay to someone that he did not know that he simply had seizures, instead of the fact that he suffers from three very serious but often stigmatized

mental disorders." (*Id.*) Sam Martin stated that he would be available to meet Mr. Martz each of the next three days. (*Id.*)

In a response dated October 1, 2019, Mr. Martz told Sam Martin that "the owner considered the certificate and conclusory statements from counsel insufficient to verify Martin's need for an accommodation" and that "Martin had claimed to have a prescription for a service animal[,] but it had never been provided." (*Id.*) Mr. Martz stated that "[w]e have never been provided … a 'credible statement by the individual' or a 'reliable third party' and 'the information that is necessary to evaluate if the reasonable accommodation is needed because of a disability.'" (*Id.*, PageID.1523).

The record reflects that on October 2, 2019, Mr. Martin obtained a letter from Tanisha Martin, a psychiatric nurse practitioner employed at the Oxford Wellness Center, stating that "Robert Martin is currently under my care for treatment of mental illness. An emotional support animal is warranted for his continuity of care." (ECF No. 150-11, PageID.1516). Mr. Martz attests that "[t]throughout all my dealings with Martin and his attorneys, we were never provided with any letters from Martin's nurse practitioners prescribing a dog for his mental health." (ECF No. 150-8, PageID.1512). Mr. Martin disputes Mr. Martz's testimony that he failed to provide the requested information. (ECF No. 156, PageID.1587).

On October 3, 2019, Mr. Martz notified Mr. Martin's counsel and the tenants that the lease was in default due to Slade's presence. (ECF No. 150-18, PageID.1526). The letter did not acknowledge the special provision for Slade written into the Lease. The letter detailed how the tenants "may remedy the breach": remove the animal; pay attorney's fees; replace carpet at tenants' expense; allow inspection; and recognize that any further violation will result in immediate eviction. (*Id.*) Approximately two weeks later, on October 14, 2019, the Texas LLC filed a

6

complaint for eviction in Justice Court of Lafayette County, Mississippi. (ECF No. 150-19), PageID.1528-32). The Complaint cited the no pets provision of the Lease but did not mention the special lease provision allowing Slade to be present. (*Id.*) The Complaint noted that the tenants "have a canine named 'Slade' in the leased premises" and that "an application for an accommodation under the [ADA] was made by Defendant(s)." (*Id.*) The Complaint stated that "information necessary and sufficient to verify the validity of the request has not been provided despite many requests over more than a month." (*Id.*)

Two days later, on October 16, 2019, a new LLC, also called RUREDY808, L.L.C., was created in Mississippi (the "Mississippi LLC"). Mr. Savage was named as the sole member of the Mississippi LLC. (ECF No. 146-1, PageID.589).

On October 22, 2019, the University of Mississippi Low-Income Housing Clinic filed a Fair Housing Complaint with HUD on behalf of Mr. Martin. (ECF No. 150-20, PageID.1534) The Complaint asserts, among other things, that although the leasing agent working for Mr. Savage and the Texas LLC granted Mr. Martin's request for an accommodation, "respondents have since refused to accommodate Mr. Martin and have also aggressively harassed him about the nature of his disability." (*Id.*) The Complaint states that these actions "constitute a discriminatory violation of Mr. Martin's right to a reasonable accommodation under the federal Fair Housing Act." (*Id.*) On November 5, 2019, the Texas LLC voluntarily dismissed the complaint for eviction it had filed.

Defendants did not pursue eviction further. Mr. Martin continued to live in the condominium with Slade and the other tenants until the spring of 2020, when the Covid-19 pandemic created far-reaching disruptions. Mr. Martin departed Oxford and did not reside in the condominium again. The Lease expired in July 2020, and Mr. Martin and the other tenants did not attempt to renew the Lease.

Mr. Savage, the Texas LLC, the Mississippi LLC, and Plaintiff Martin remained at odds. On September 23, 2020, Mr. Martin filed this lawsuit against Mr. Savage and RUREDY808, L.L.C. (ECF No. 1). Mr. Martin claims that Defendants violated the FHA, 42 U.S.C. § 3604(f)(1); § 3604(f)(2); § 3604(f)(3)(B); and § 3617 (Count I). Mr. Martin also brings under Mississippi state law claims of breach of contract (Count II); breach of covenant of quiet enjoyment (Count III); negligent infliction of emotional distress (Count IV); and violation of the Mississippi Landlord Tenant Act (Count V).[5] On August 30, 2021, the United States filed the consolidated action on behalf of Mr. Martin under the FHA. (Case No. 3:21-cv-192). The United States brings claims under the same FHA provisions as Mr. Martin as well as an additional claim under § 3604(c).

Mr. Martin seeks summary judgment in his favor as to his claims under the FHA. Mr. Martin also asks the Court to determine that Mr. Savage may be held personally liable for the breach of contract claim individually or via a veil-piercing theory.[6] Defendants seek summary judgment in their favor as to all claims. The government joins Mr. Martin in opposing Defendants' motion for summary judgment.

## LEGAL STANDARDS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 248 (1986). At the summary judgment stage, the court must "draw all reasonable inferences in favor of the

---

[5] Defendants appear to have abandoned a counterclaim for breach of contract.
[6] Plaintiff also requested a determination that Mr. Savage may be held personally liable for the FHA claims. Defendants concede that Mr. Savage may be held personally liable for the FHA claims should he lose on the merits of the claims.

nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). If a moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party "must come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 634 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

## DISCUSSION

### 1. Discrimination under the FHA

Section 3604 of the FHA prohibits discrimination concerning the sale, rental, and financing of housing based on disability. *See* 42 U.S.C. § 3604; *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729 (1995). Under the FHA, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of … that buyer or renter … or any person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1). Similarly, the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of … that person … or a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." *Id.*, § 3604(f)(2). Under § 3406(f)(3), unlawful discrimination also includes "a refusal to make reasonable accommodation in rules, policies,

9

practices, or services, when such accommodations may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling." *Id.* at § 3604(f)(3)(B); *see also City of Edmonds*, 514 U.S. at 729.

"With discriminatory treatment claims, there can be no liability without a finding that the protected trait (e.g., race) motivated the challenged action." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 910 (5th Cir. 2019). "Once a plaintiff has presented prima facie evidence of housing discrimination, either through direct or circumstantial evidence," summary judgment is ordinarily inappropriate, because a claim of discrimination requires a determination of subjective intent. *Texas v. Crest Asset Management, Inc.*, 85 F.Supp.2d 722, 729 (quotation omitted).

Summary judgment is inappropriate in this case. There is ample evidence based on which a fact finder could find for either side. The evidence taken in the light most favorable to Plaintiff could support a finding of intentional discrimination. If it accepted Plaintiff's account, a jury could conclude that Mr. Martin sought and received what he believed was an accommodation to have Slade reside with him in the condominium with him to help him manage his disability. According to Plaintiff, APM, acting as a "duly authorized agent," granted what it believed to be precisely such an accommodation. Immediately upon learning of Slade's presence in the condominium, Mr. Savage demanded that APM have Slade removed. In Plaintiff's view, Mr. Savage rejected APM's consistent position that it would be unlawful to seek Slade's removal, and he terminated the Management Agreement when he did not get his way. Mr. Savage's then-counsel repeatedly sought information from Mr. Martin regarding his disability and discounted the information Mr. Martin and his counsel provided, including, among other things, Mr. Martin's prescription for an emotional support animal. Mr. Savage filed a complaint for eviction based on an alleged violation

of the no-pets provision of the Lease without making the Justice Court aware of the special provision allowing Slade to be present, a material omission. Mr. Savage dismissed the complaint for eviction only after counsel intervened on Mr. Martin's behalf. Plaintiff continued to reside with Slade in the condominium after enduring months of distress. Plaintiff's well-supported account would enable a jury to find in Plaintiff's favor on his claims of unlawful, intentional discrimination under the FHA.

The same evidence taken in the light most favorable to the Defendants could reasonably support a different finding. In Defendants' account, APM acted outside the scope of the Management Agreement by granting an accommodation to Mr. Martin. Defendants contend that before requesting information from Mr. Martin about his disability, they consulted with the federal government regarding what questions they were permitted to ask under the FHA and followed the instructions to the letter. According to Defendants, Mr. Martin unreasonably refused to provide a prescription or letter of medical necessity demonstrating his need for an emotional support animal. Defendants contend that Mr. Martin also failed to demonstrate that Slade qualified as a certified service animal. Defendants note that they withdrew the complaint for eviction and allowed Mr. Martin and Slade to complete the term of the lease. On this record, a factfinder could determine that there was no intent to discriminate; that the Defendants attempted to follow the law by requesting only appropriate information; that Mr. Martin unreasonably failed to provide information to Defendants; and that any harm was minimal because Mr. Martin and Slade were able to complete the term of the lease.

    2. *Retaliation under the FHA*

Under § 3617 of the FHA, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed…any

right granted or protected by [42 U.S.C. § 3604]." 42 U.S.C. § 3617. Courts analyze retaliation claims brought under the FHA using the same standards applicable to retaliation claims under Title VII. *Texas*, 85 F.Supp.2d at 733. To prevail on a claim under § 3617, a plaintiff must demonstrate that (1) he is a protected person under the FHA; (2) he was engaged in the exercise or enjoyment of his fair housing rights; (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff because of his protected activity under the FHA; and (4) an intent to discriminate motivated the defendants." *Bloch v. Frischolz*, 587 F.3d 771, 783 (7th Cir. 2009).

Summary judgment on the retaliation claim hinges on the same kinds of factual determinations as the discrimination claims. Moreover, causation is a quintessential question of fact. For the reasons recited above, neither side is entitled to summary judgment on Mr. Martin's retaliation claim. Nor are Defendants entitled to summary judgment on the government's additional claim under *42 U.S.C. 3605(c)*.

*3. Breach of Contract*

The parties have not developed a record adequate to support either a ruling on Plaintiff's motion for a finding of personal liability as to the breach of contract claim or a ruling in Defendants' favor on the merits of the breach of contract claim. The contract at issue is the Lease. The Lease was executed by APM as the "duly authorized agent" of the "Lessor." No "Lessor" is named in the Lease. The Management Agreement between the "Owner" of the condominium is signed by Mr. Savage without any reference to an LLC. The Texas LLC is the only business entity that could be considered the "Owner" for whom APM served as "duly authorized Agent" in executing the Lease. It is undisputed that the Texas LLC owned the condominium from February 2016 until after the expiration of the Lease. There is no record evidence that the Mississippi LLC ever owned the condominium. Yet the parties appear to agree that the Mississippi LLC, and not

12

the Texas LLC, is the only business entity named as a defendant in this case. If the Texas LLC is not a party in this case, Plaintiff may pursue a claim for breach of the Lease only against Defendant Savage in his personal capacity. It is unclear on the present record whether Plaintiff is asserting that Defendant Savage executed the Management Agreement in his personal capacity and is therefore the "Lessor" to whom the lease refers (and for whom APM served as a "duly authorized agent."). Absent clarity from the parties, the Court is unable to rule on the merits of the breach of contract claim.

*4. Other State Law Claims*

Based on the same facts discussed above, Defendants seek summary judgment on Plaintiff's remaining state law claims for breach of the covenant of quiet enjoyment; negligent infliction of emotional distress; and violation of the Mississippi Residential Landlord Tenant Act. Like Mr. Martin's claims of discrimination and retaliation under the FHA, these claims rely upon fact-intensive inquiries and require subjective determinations. Defendants are not entitled to summary judgment.

CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment as to personal liability (ECF No. 146) is **GRANTED** to the extent Plaintiff asserts that Mr. Savage may bear personal liability for Plaintiff's claims under the FHA and is **DENIED** in all other respects. Plaintiff's Motion for Summary Judgment as to the merits of the FHA claims (ECF No. 148) and Defendants' Motion for Summary Judgment (ECF No. 150) are **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 9th day of February, 2023.

**/s/ Michael P. Mills**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**